UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HEATHER ROSSI, | Case No. 2:19-cv-13113 |
| Plaintiff, | |
| v. | Sean F. Cox<br>United States District Court Judge |
| WAYNE COUNTY AIRPORT AUTHORITY, | |
| Defendant. | |

## OPINION AND ORDER

The Airport Response Center ("ARC") is a round-the-clock operation that oversees the security, police, and fire dispatching for the Wayne County Airport Authority ("WCAA"), which operates Detroit Metropolitan Wayne County Airport and Willow Run Airport in Ypsilanti. Heather Rossi worked in the ARC for three years before resigning in May 2019. During the last several months of her tenure, Rossi suffered from health issues that required her to take multiple stints of medical leave. Believing that the WCAA discriminated against her because of her use of medical leave, Rossi filed suit under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA").

For the reasons discussed below, the Court grants the WCAA's motion for summary judgment.

## I. Facts

The WCAA hired Rossi in May 2016 as a communications specialist. (ECF No. 30-2, PageID.293.) A year later, she was promoted to communications training officer. (*Id.* at

PageID.294.) Rossi first applied for (and received) FMLA leave in January 2018, when she underwent a partial hysterectomy. (*Id.* at PageID.300.) Around May, she had flare-ups of irritable bowel syndrome (IBS) that required her to miss work "a couple times a month." (*Id.* at PageID.301, 305.) Rossi's supervisor, Corey Noble, suggested that she request intermittent FMLA time to deal with these flare-ups. (*Id.* at PageID.301.)

In September 2018, Noble called Rossi into his office. (*Id.* at PageID.305–06.) Noble told Rossi that she was next in line to be promoted to a supervisor position because one of the supervisors was about to become an assistant manager. (*Id.*) According to Rossi, Noble said "he wanted to make sure I knew that he needed someone who was going to be there and was not going to be out sick on FMLA all the time." (*Id.*) Rossi assured Noble that she "would try not to use [her] FMLA if [she] could help it." (*Id.*) Rossi mentioned this conversation to Zainab Beydoun, another supervisor, who "basically told [her] that it looked bad if [she] took FMLA for a promotion." (*Id.*) Nobody explicitly told Rossi that she could not take FMLA, she says. (*Id.* at PageID.323.) Around this time, another employee, Clayton Cipolletti, also was told by Noble that using FMLA leave could result in negative career consequences. (ECF No. 32-9.)[1]

On December 3, 2018, the WCAA promoted Rossi to supervisor. (ECF No. 30-2, PageID.306.) On December 19, Rossi had surgery for a gastric band removal, for which she took FMLA leave. (*Id.* at PageID.307.) Rossi returned from medical leave on January 4, 2019. (*Id.*) The next day, Beydoun wrote a memo to Noble that documented how Rossi's recent behavior at the

---

[1] Noble denies that he ever warned Rossi to be careful about her medical leave. (ECF No. 30-12, PageID.566.) In a deposition, Beydoun testified that she was unaware that Rossi was on intermittent FMLA leave. (ECF No. 30-3, PageID.367.) Beydoun added that she was aware of Rossi's need for extra bathroom breaks, which she allowed. (*Id.*)

ARC did "not meet our standards." (ECF No. 30-9.) In the week before Rossi's most recent leave, according to Beydoun, several employees told her that Rossi was not performing her duties or was behaving in a "sluggish" manner. (*Id.*) Beydoun also said that Rossi had not shown up to work on December 17 and tried to use sick leave although she had no available leave. (*Id.*) Finally, Beydoun specifically complained in the letter about Rossi's poor work performance on January 5, when Rossi only "answered 3 out of the 25 calls that came in." (*Id.*) Rossi returned to the hospital on January 22, 2019, with a case of diverticulitis. (ECF No. 30-2, PageID.303.) She took FMLA leave until January 31. (*Id.* at PageID.307.)

Soon after, Rossi interviewed for a promotion to training coordinator. (*Id.*) The job posting (ECF No. 30-11) required that applicants:

> 1. Be a regular employee; AND
> 2. [Possess a] High School or General Education Diploma (GED); AND
> 3. Two (2) years of experience as a Communications Specialist-Special Services with the Wayne County Airport Authority; OR
> 4. One (1) year of experience as Airport Response Center Supervisor-Special Services with the Wayne County Airport Authority.

Rossi's panel of interviewers on February 18 consisted of Noble and two others. (ECF No. 30-2, PageID.308.) Rossi was among six people who interviewed for the position, including Cipolletti. (ECF No. 30-12, PageID.567, 576.) The interview rubric was governed by a collective bargaining agreement, which assigned 40 percent weight to "technical qualifications" and 60 percent to "personal qualifications." (ECF No. 30-11.) Questions included, "Tell us about a situation when you were faced with multiple priorities but only had a limited amount of time to complete them" and "What are the national dispatch organizations and describe why they are important?" (ECF No. 30-21.) There is no indication in Rossi's score sheet that her amount of

3

medical leave was considered. (*Id.*) According to Noble, HR was responsible for the scoring, which was based on a list of suggested answers created before the interview. (*Id.*; ECF No. 30-12, PageID.569.)

Rossi was informed on February 22 that she did not earn the promotion. (ECF No. 30-2, PageID.308.) She scored a total of 64 out of a possible 75 points. (ECF No. 30-21.) The position instead was awarded to John Barile. (ECF No. 30-12, PageID.567.) Barile had been a communications specialist, which was one level below Rossi's. (*Id.* at PageID.567–68.) Rossi believed that she had more relevant experience and certifications than Barile as well as more seniority, based on speaking with Barile and viewing his LinkedIn profile. (ECF No. 30-2, PageID.317.) Rossi did not know the scores of Barile or the other job applicants, which do not appear in the record. (*Id.*) She also acknowledged that she had not seen Barile's resume and that Barile's experience level alone did not mean his promotion was unwarranted. (*Id.*) In his deposition, Noble confirmed that Barile met the requirements of the job posting. (ECF No. 30-12, PageID.579–80.) Rossi "failed the interview," according to Noble. (*Id.* at 568.)

On February 25—three days after she was denied the training coordinator position—Rossi requested a demotion from supervisor back to communications specialist. (ECF No. 30-13.) She wrote: "As much as I would like to continue in the position of ARC supervisor, evolving family situations lead me to believe that I will be of much more use to the ARC going forward as a Communications Specialist." (*Id.*) Her request for a demotion was approved that day. (ECF No. 30-14.) The next afternoon, February 26, Rossi called to say she was back in the hospital. (ECF No. 30-15.) Rossi was suffering from diverticulitis again and expected to be out until March 4. (ECF No. 30-16.) She asked her doctor's office to submit the necessary paperwork for FMLA

4

leave, but the office did not immediately do so. (ECF No. 30-2, PageID.304.) Rossi called out sick on FMLA leave on both March 4 and March 13, but HR had no record yet of approved FMLA leave. (ECF No. 30-17.) So Zachary Griwicki, one of Rossi's supervisors, drafted a conduct incident report based on her missed days. (*Id.*) Noble approved the incident report. (*Id.*) Rossi soon contacted her doctor's office, which submitted the late paperwork for intermittent FMLA leave. (ECF No. 30-2, PageID.297.) After receiving the document, Griwicki told Rossi that she would not face repercussion for those two days off and that her incident report had been removed from her file. (*Id.* at PageID.315.)

Then, on April 22, 2019, Rossi submitted her resignation effective May 6. (ECF No. 30-20.) She wrote in her letter that she was "grateful" for the experience and did not mention anything about medical leave. (*Id.*) "No one at the Airport Authority personally pressured me to resign," she added in her deposition. (ECF No. 30-2, PageID.320.) Nor had anyone threatened her about taking FMLA leave in the future, she said. (*Id.*)

Rossi filed suit against the WCAA on October 23, 2019, and amended her complaint on August 7, 2020. Her complaint asserts that the WCAA violated the ADA and its state-law counterpart as well as the FMLA. She adds that she was forced into taking a demotion and that she ultimately resigned because of disability discrimination. In response, the WCAA filed a motion for summary judgment. The parties have briefed the issues, and the Court held a Zoom hearing on March 11, 2021.

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52 (citing *Anderson*, 477 U.S. at 248). In evaluating a motion for summary judgment, this Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. FMLA Interference and Retaliation Claims

Under the Sixth Circuit's case law, there are two different theories of recovery under the FMLA: interference and retaliation. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 307 (6th Cir. 2016). Here, Rossi advances both types of claims.

"To establish a claim for interference under the FMLA, a plaintiff must demonstrate that (1) he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled." *Id.* at 308. Here, the WCAA agrees that is an employer under the FMLA and that Rossi was an eligible employee entitled to leave who gave notice. The WCAA disputes only the fifth element—that it denied Rossi entitled FMLA benefits.

An employer is liable under the interference theory when it "shortchanges an employee's leave time, denies reinstatement, or otherwise interferes with an employee's substantive FMLA rights." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 384–85 (6th Cir. 2017) (alterations omitted) (quoting *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012)). So

the question is whether "the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve week leave or reinstatement after taking a medical leave." *Seeger*, 681 F.3d at 283 (quoting *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). To survive a summary judgment motion, the employee must produce evidence showing that her employer denied her leave or refused to reinstate her once she returned. *See Marshall*, 854 F.3d at 385.

However, Rossi fails to point to any evidence that she was ever denied FMLA benefits or refused reinstatement upon returning. Rather, she was granted medical leave on numerous occasions: January 2018, May 2018, December 2018, January 2019, and March 2019. Rossi does not dispute that she received frequent FMLA leave. After there was confusion about her leave in March 2019, which temporarily resulted in an incident report, Rossi's supervisor eventually removed the violation upon receiving her doctor's paperwork. Rossi was not penalized. There also was an incident in December 2018 when Rossi tried to take unavailable sick leave, but she eventually received FMLA leave for that period, too. In conclusion, the WCAA neither shortchanged Rossi's entitled leave nor denied reinstatement after any of her medical absences. Rossi cannot meet the criteria necessary for the interference theory of an FMLA violation.[2]

When an employee alleges FMLA retaliation with indirect evidence, the claim is governed by the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

---

[2] At oral argument, Rossi's counsel argued that the denial of a promotion can be an FMLA "benefit," citing *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007). However, *Wysong* does not support that argument about FMLA interference. Rather, the Sixth Circuit has made clear that the interference theory relates to substantive entitlements specified by the FMLA, such as leave time and reinstatement (not promotions). *See, e.g.*, *Marshall*, 854 F.3d at 384–85; *Seeger*, 681 F.3d at 283. The failure to promote, though, can be an adverse employment action for the purposes of a retaliation claim, which is discussed later in this opinion.

802–04 (1973). *See Marshall*, 854 F.3d at 379. The first step is to establish a prima facie case, in which an employee must show that

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). Then, the burden shifts to the employer to "present a legitimate, nondiscriminatory reason for its decision." *See id.* "If [an employer] successfully carries this burden, [the employee's] claims could survive summary judgment only if she can show that [the employer's] stated reasons are a pretext for unlawful discrimination." *Id.* at 761–62.

Rossi raises one instance of an adverse employment action under the FMLA: her failure to be promoted to training coordinator in February 2019. The WCAA disputes that Rossi can make out a prima facie case because she did not suffer an adverse employment action. However, failure to promote an employee is a quintessential adverse employment action. *See, e.g.*, *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 632 (6th Cir. 2018); *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 765 (6th Cir. 2008). The WCAA also argues that there was no causal connection between such action and the FMLA activity. Whether a causal connection existed between Rossi's use of medical leave and the WCAA's failure to promote her is more complicated. Nevertheless, Rossi's burden at this stage is "'not onerous' and 'poses a burden easily met.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 659 (6th Cir. 2000)). So the Court will assume without deciding that Rossi can establish a prima facie case.

With the burden shifted to the WCAA at step two of *McDonnell Douglas*, it must present a legitimate, nondiscriminatory reason for bypassing Rossi for a promotion. Here, the WCAA has successfully met its burden. The HR department tallied the results of the candidates' exams based on a rubric assigning 40 percent weight to "technical qualifications" and 60 percent to "personal qualifications." After the interview scoring was complete, Rossi (64 out of 75 points) failed to gain the best score among the six candidates. John Barile met the qualifications to apply and then was promoted based on the standard criteria from HR. This constitutes a legitimate, nondiscriminatory reason.

Moving to the final stage, Rossi must demonstrate that the WCAA's proffered reason "was not the true reason for the employment decision, but rather a pretext for discrimination." *See Provenzano*, 663 F.3d at 815 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). As the Sixth Circuit has explained: "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).

Rossi seeks to show pretext by arguing that a lesser qualified individual was hired instead of her. According to that logic, the WCAA denied her the promotion because of her FMLA leave even though she was at least as qualified as Barile. On this matter, there are two ways to establish a triable issue of fact: "(1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified

9

as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Id.*

On this record, no reasonable factfinder could conclude that WCAA's reason was a pretext for FMLA retaliation. For starters, Rossi does not know—and the record fails to show—how Barile scored on his interview. Rossi has never seen Barile's resume and does not profess to know the extent of his qualifications. To be sure, Rossi lists many certifications on her resume and was employed at one level above Barile prior to the promotion. And Noble's purported warning not "to be out sick on FMLA all the time," which must be taken as true on summary judgment, is troubling, as was another supervisor's statement that medical leave would "look bad."[3] But in order to survive summary judgment, Rossi at least must show evidence that she was a plainly superior candidate to Barile or that she was equally qualified (with other evidence of discrimination). Yet, the record does not include does not include Barile's resume, qualifications, or test scores. Ultimately, no reasonable juror could conclude that Rossi was plainly superior to Barile or even equally qualified to him.[4]

So even assuming that Rossi satisfies step one of *McDonnell Douglas*, she cannot demonstrate that WCAA's stated reason for promoting Barile instead of her (their comparative test scores) was pretextual. Having not met her burden regarding discrimination, Rossi's FMLA argument falls short.

---

[3] The Court notes that Rossi did receive one promotion just a few months after Noble's statement to her.

[4] At oral argument, Rossi's counsel acknowledged that Rossi's scores "ranked at the bottom" among the candidates. He also confirmed that the record does not indicate the scores or job qualifications of either Barile or the several other candidates who ranked ahead of Rossi.

## IV. ADA and PWDCRA Claims

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") "essentially track those" under the ADA." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014).

Like the FMLA, the *McDonnell Douglas* framework governs an ADA discrimination claim with indirect evidence. *See id.* Specifically, to prove a prima facie case of disability discrimination, Rossi must show that she "is disabled," that she "is otherwise qualified to perform the essential functions of a position, with or without accommodation," and that she "suffered an adverse employment action because of [her] disability." *See id.* Again, the burden would shift to the WCAA as the employer to articulate a legitimate, nondiscriminatory reason for terminating Rossi. *See id.* at 434. And lastly, Rossi would have to present evidence from which a reasonable jury could conclude pretext. *See id.* Additionally, the disability discrimination must be a "but-for" cause of the adverse employment action. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

In her disability-discrimination claims, Rossi lists her lack of promotion, her voluntary demotion, and her resignation as adverse employment actions. Assessing each of these events, the Court concludes that Rossi cannot make out a prima facie disability-discrimination case.[5]

---

[5] "[F]ailing to make a reasonable accommodation falls within the ADA's definition of 'discrimination.'" *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). One of Rossi's supervisors allowed her extra bathroom breaks as an accommodation for Rossi's IBS. It is

First, Rossi's theory that she was denied a promotion based on her disability fails for the same reason as her FMLA claim. Even if she could make out a prima facie case regarding this employment action, she cannot meet her burden to show pretext at step three of *McDonnell Douglas*. On the topic of disability discrimination, Rossi's brief asserts that "the position was awarded to a lesser qualified employee," but that conclusory statement does not have support in the record. Nor does the score sheet indicate any consideration of Rossi's medical leave. Ultimately, she cannot rebut the WCAA's nondiscriminatory rationale that she was not promoted because she failed to garner the highest score.

Second, Rossi argues that she was forced to request a demotion and that she eventually resigned because of disability discrimination. She says that she took these actions because Noble's comments led her to believe she would be forced out. In other words, Rossi asserts that she was constructively discharged. She does not assert that she was fired or reassigned to a new role involuntarily.

A constructive discharge, taken by an employee who is not fired or demoted, can constitute an adverse employment action in certain scenarios. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). "To demonstrate a constructive discharge, a plaintiff must adduce evidence to show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 303 (6th Cir. 2019) (alterations and internal quotation marks omitted) (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001)).

---

unclear from the record whether Rossi required any other accommodations to perform her job due to her IBS.

A court must find that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (quoting *Talley v. Fam. Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1107 (6th Cir. 2008)). Such difficult or unpleasant working conditions include "menial or degrading work" and "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation." *See Laster*, 746 F.3d at 728.

As evidence of her constructive discharge, Rossi notes little more than Noble's comments about her not being "out sick on FMLA all the time," which she found to be harassing. As inappropriate as that statement was, though, it falls short of the legal standard. For one thing, Rossi has failed to demonstrate that this one utterance was calculated to encourage her resignation. Rather, the discussion occurred in relation to Rossi's first potential promotion. Rossi did receive that promotion and, Noble's sentiment aside, the WCAA never demoted her in response to her use of medical leave. On the contrary, Rossi requested a *voluntary* demotion due to "evolving family situations" even though she would have "like[d] to continue in the position of ARC supervisor." Her resignation letter made no mention of harassment either, stating instead that she was "grateful" for the job. And she acknowledged that no one pressured her to resign or threatened to interfere with future medical leave.

Ultimately, no reasonable juror could conclude that Rossi's working conditions were so unpleasant that a reasonable employee would have felt compelled to resign. Regarding these two events, therefore, she cannot demonstrate that she was fired, demoted, constructively discharged, or otherwise the recipient of an adverse employment action. Since Rossi cannot show that she

suffered an adverse employment action based on her disability, she fails to make out a prima facie case under either the ADA or PWDCRA.

## V. Conclusion

Because the Court finds that the WCAA is entitled to judgment as a matter of law on all counts, the motion for summary judgment is hereby **GRANTED**.

**IT IS SO ORDERED.**

Dated: March 17, 2021

                                                  s/Sean F. Cox
                                                  Sean F. Cox
                                                  U. S. District Judge